IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-00967-PAB-KAS

ANTHONY JOHN CHENOWETH,

     Plaintiff,

v.

GUZMAN, Officer, and
C. KUDLAUSKAS, PA-C,

     Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Defendants' **Motion to Dismiss Amended Complaint [ECF No. 25] for Under Rule 12(b)(6)** [#42][1] (the "Motion"). Plaintiff, who proceeds as a pro se litigant,[2] filed a Response [#45] in opposition to the Motion [#42], Defendants filed a Reply [#51], and Plaintiff filed a Sur-Reply [#53]. The Motion [#42] has been referred to the undersigned for a Recommendation pursuant to 28 U.S.C. §

---

[1] "[42]" is an example of the convention that the Court uses to identify the docket number assigned to a specific filing by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

[2] Because of Plaintiff's pro se status, the Court liberally construes his filings. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, the Court cannot act as a plaintiff's advocate and must still apply the same procedural rules and substantive law to a pro se litigant as to a represented party. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see also Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008) ("Pro se status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure.") (citation and internal quotation marks omitted). Thus, while the Court makes "some allowances" for a pro se plaintiff's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with the pleading requirements," the Court "cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D.C.COLO.LCivR 72.1(c)(3). *See* [#43]. The
Court has reviewed the briefs, the entire case file, and the applicable law. For the reasons
stated below, the Court **RECOMMENDS** that the Motion [#42] be **GRANTED in part and
DENIED in part**.

## I. Background[3]

Plaintiff is a convicted and sentenced state prisoner in the custody of the Colorado
Department of Corrections. *Am. Compl.* [#25] at 2. Plaintiff filed an Amended Prisoner
Complaint [#25] (the "Amended Complaint") asserting two claims against Defendants Joel
Guzman ("Guzman") and Charles Kudlauskas ("Kudlauskas"), who are employees at the
Buena Vista Correctional Facility ("BVCF"). Defendant Guzman is an officer and
Defendant Kudlauskas is a medical provider. *Id.* at 2-3. Plaintiff alleges that Defendants
violated his Eighth Amendment rights while incarcerated at BVCF. *Id.* at 7-8.

Plaintiff's first claim alleges that, on or about July 10, 2023, he was working in the
kitchen when Sergeant Torrez, Defendant Guzman's wife, ordered him to clean the
compost room. *Id.* at 7. Plaintiff claims that Sergeant Torrez smiled at him, which caused
Defendant Guzman to become "enraged with jealousy" and "yank[] [Plaintiff] on [his] left
arm." *Id.* Defendant Guzman then instructed Plaintiff not to smile at Sergeant Torrez. *Id.*
Plaintiff further alleges that approximately two weeks later, Defendant Guzman yanked
on his left arm a second time when Sergeant Torrez smiled at Plaintiff while giving him

---

[3] The facts are drawn from the allegations in Plaintiff's Amended Complaint [#25], which the Court
accepts as true at this stage of the proceedings. *See Wilson v. Montano*, 715 F.3d 847, 850 n.1
(10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)). The Court does
not consider any additional factual allegations raised by Plaintiff in the briefing. *See In re Qwest
Commc'ns Int'l, Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) (disregarding additional factual
claims asserted in briefing on a motion to dismiss, explaining that "plaintiffs may not effectively
amend their [c]omplaint by alleging new facts in their response to a motion to dismiss").

orders to slice bread. *Id.* As a result, Plaintiff alleges he has experienced extreme pain in his left shoulder. *Id.* This has interfered with his ability to accomplish everyday activities such as dressing himself, showering, and pushing himself off his bed. *Id.* At one point, Plaintiff was placed in restrictive housing because he was unable to defend himself against other inmates due to the nature of his injury. *Id.* Plaintiff now brings a claim against Defendant Guzman for excessive force under the Eighth Amendment. *Id.*

As a result of these alleged injuries, Plaintiff sought medical attention from Defendant Kudlauskas. *Id.* Defendant Kudlauskas ordered an x-ray of Plaintiff's shoulder and further ordered Plaintiff to undergo a course of physical therapy. *Id.* Plaintiff alleges that upon completion of physical therapy, he asked Defendant Kudlauskas to order an MRI on his shoulder, believing there was tendon damage. *Id.* According to Plaintiff, Defendant Kudlauskas indicated that more steps needed to be taken before ordering an MRI, such as seeing an outside physical therapist. *Id.* Plaintiff expressed on numerous occasions, in meetings and through written grievances, that he believed he needed an MRI of his left shoulder and that he was still experiencing pain. *Id.* Ultimately, Plaintiff did not receive an MRI while incarcerated at BVCF, nor did he receive any further treatment after he completed the prescribed physical therapy course in August 2023. *Id.* Plaintiff now brings a claim for deliberate indifference under the Eighth Amendment against Defendant Kudlauskas on the grounds that he "purposefully denied [Plaintiff] treatment because he maliciously wanted to see [Plaintiff] suffer great amounts of pain[.]" *Id.* at 8.

Plaintiff filed his Amended Complaint [#25] on September 23, 2024, asserting Eighth Amendment claims against Defendants in their individual and official capacities. *Am. Compl.* [#25] at 2-3. Shortly thereafter, a Magistrate Judge recommended that the

3

claims against Defendants in their official capacities be dismissed as barred by the Eleventh Amendment. *See Recommendation* [#26]. A District Judge adopted the Recommendation [#26]. *See Order Adopting Recommendation* [#27]. Defendants subsequently filed the instant Motion [#42], asserting that Plaintiff failed to plausibly allege actionable Eighth Amendment claims and that Defendants are entitled to qualified immunity. *See Motion* [#42].

Given the earlier dismissal of Plaintiff's official capacity claims, only individual capacity claims remain against Defendant Guzman for excessive force and Defendant Kudlauskas for deliberate indifference to serious medical needs.

## II. Legal Standards

### A.    Rule 12(b)(6)

Fed. R. Civ. P. 12(b)(6) permits dismissal of a claim where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). However, conclusory allegations are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Rather, "[a] complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "When the complaint includes 'well-pleaded allegations, a court should assume their veracity and then determine whether

they plausibly give rise to an entitlement to relief.'" *Carraway v. State Farm & Cas. Co.*,
No. 22-1370, 2023 WL 5374393, at *4 (10th Cir. Aug. 22, 2023) (quoting *Iqbal*, 556 U.S.
at 679).

"A pleading that offers labels and conclusions or a formulaic recitation of the
elements of a cause of action will not do . . . [n]or does a complaint suffice if it tenders
naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal
quotation marks omitted). "[D]ismissal under Rule 12(b)(6) is appropriate if the complaint
alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC
Universal, Inc.*, 861 F.3d 1081, 1104-05 (10th Cir. 2017). "The court's function on a Rule
12(b)(6) motion is not to weigh potential evidence that the parties might present at
trial[.]" *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir.
1999).

## B. Qualified Immunity

"The doctrine of qualified immunity shields officials from civil liability so long as
their conduct 'does not violate clearly established statutory or constitutional rights of which
a reasonable person would have known.'" *Est. of Lockett v. Fallin*, 841 F.3d 1098, 1107
(10th Cir. 2016) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). Once the defense of
qualified immunity has been raised, "the onus is on the plaintiff to demonstrate '(1) that
the official violated a statutory or constitutional right, and (2) that the right was clearly
established at the time of the challenged conduct.'" *Quinn v. Young*, 780 F.3d 998, 1004
(10th Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)) (internal
quotations omitted). "If the plaintiff fails to satisfy either part of the two-part inquiry, the
court must grant the defendant qualified immunity." *Gross v. Pirtle*, 245 F.3d 1151, 1156

(10th Cir. 2001). When considering the first prong, the Court must look at whether the facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) (holding that a plaintiff "must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated [his] constitutional rights, and that those rights were clearly established at the time"). If the plaintiff fails to state a constitutional claim, dismissal based on qualified immunity is appropriate. *See Montoya v. Vigil*, 898 F.3d 1056, 1064 (10th Cir. 2018) ("[I]f the plaintiff failed to state a claim under Rule 12(b)(6), the government would also be entitled to government immunity.").

Regarding the second prong, "[t]he law is clearly established when a Supreme Court or [published] Tenth Circuit precedent is on point or the alleged right is clearly established from case law in other circuits." *Irizarry v. Yehia*, 38 F.4th 1282, 1293 (10th Cir. 2022) (citation omitted); *see also Quinn*, 780 F.3d at 1005 (noting that clearly established law arises from "an on-point Supreme Court or published Tenth Circuit decision" or the "clearly established weight of authority from other courts"); *Ullery v. Bradley*, 949 F.3d 1282, 1291-92 (10th Cir. 2020) (recognizing that the law was clearly established based on the consensus of persuasive authority from six other circuits). "The plaintiff bears the burden of citing . . . what he thinks constitutes clearly established law." *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010).

# III. Analysis

## A.    Claim One against Defendant Guzman: Excessive Force

Plaintiff claims that Defendant Guzman violated his Eighth Amendment rights and subjected him to excessive force when Defendant Guzman yanked his left arm on two separate occasions in an apparent jealous rage, causing him extreme pain. *See Am. Compl.* [#25] at 7. Defendant Guzman argues that Plaintiff has failed to state an actionable excessive force claim under the Eighth Amendment. *See Motion* [#42] at 4.

When a prisoner "alleges that he was subject to excessive force while incarcerated, that claim of excessive force falls under the rubric of the Eighth Amendment's ban on cruel and unusual punishment." *Fleet v. Tidwell*, No. 14-cv-02632-NYW, 2015 WL 4761190, at *5 (D. Colo. Aug. 13, 2015). The "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *See id.* (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 36 (2010)). Analyzing an excessive force claim is a two-pronged inquiry, consisting of: "(1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind." *Giron v. Corr. Corp. of America*, 191 F.3d 1281, 1289 (10th Cir. 1999) (internal quotations omitted).

### 1.    Objective Component

The objective component of an excessive force claim is "contextual and responsive to 'contemporary standards of decency.'" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)); *see also Whitington v. Sokol*, No.

06-cv-01245-PAB-CBS, 2009 WL 2588762, at *8 (D. Colo. Aug. 18, 2009). "[A]n inmate has a constitutional right to be secure in [his or] her bodily integrity and free from attack by prison guards." *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993). However, as the Supreme Court has recognized, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. Indeed, "[t]he Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that" it "is not of a sort repugnant to the conscience of mankind." *Id*. at 9-10 (internal quotations omitted). When conduct is "incompatible with evolving standards of decency," or involves "the unnecessary and wanton infliction of pain," it is repugnant. *See id*. at 10; *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992) (holding that significant physical injury is not necessary for an Eighth Amendment excessive force claim because the constitutional inquiry is on whether the infliction of pain was unnecessary and wanton). In analyzing this objective component, a claim "should be analyzed by determining whether the defendant's actions were objectively reasonable in light of the surrounding facts and circumstances." *Oslund v. Fauvel*, No. 15-cv-00491-KMT, 2017 WL 1327253, at *5 (D. Colo. Apr. 7, 2017). Courts also consider the "actions leading up to and at the moment of the use of force." *Id*.

Defendant Guzman first asserts that Plaintiff has not met the objective component because a "yank" is "not the kind of force that would offend the conscience of mankind or is repugnant to the standards of human decency." *Motion* [#42] at 6; *Reply* [#51] at 3-4. In support, Defendant Guzman cites two cases. *Id*. First, Defendant Guzman cites to *Norton v. City of Marietta, Oklahoma* 432 F.3d 1145, 1156 (10th Cir. 2005). There, the

plaintiff brought excessive force claims against two sheriff's deputies working in the jail. *Id*. One of the defendants approached the plaintiff in his cell to resolve a plumbing issue. *Id.* When the defendant officer ordered the plaintiff to lay down on his bed, the plaintiff disobeyed the lawful order and squatted down, at which point the defendant officer grabbed the plaintiff by the neck and twisted it. *Id.* In addressing whether this amounted to excessive force, the Tenth Circuit reasoned that this degree of force *under the circumstances* was not excessive. *Id.* Defendant Guzman next cites to *Marshall v. Milyard*, 415 F. App'x 850 (10th Cir. 2011). There, the plaintiff brought an Eighth Amendment claim against a prison official after the prison official grabbed the plaintiff's right arm and dug his fingernails into the plaintiff's skin. *Marshall v. Milyard*, 415 F. App'x at 851. The plaintiff suffered from minor bruising. *Id*. There, the Tenth Circuit recognized that the objective component was lacking, as the force applied was, at best, de minimis. *Id.* at 852.

While a yank may not be as severe as pepper spray to the face[4], or other physical altercation invoking severe violence[5], Defendant Guzman's argument that Plaintiff's injury was not sufficiently serious is unavailing as applied in this instance. A plaintiff is not required to sustain serious or significant injuries to satisfy the objective component of an Eighth Amendment excessive force claim. *See Hudson*, 503 U.S. at 9; *United States v.*

---

[4] *See Toney v. Harrod*, 372 F. Supp. 3d 1156, 1163 (D. Kan. 2019) (noting that, per Tenth Circuit precedent, "use of pepper spray is not inherently a de minimus use of force" and concluding that the plaintiff satisfied the objective prong when he alleged that a corrections officer sprayed him with mace during a dispute regarding the temperature of the plaintiff's meal, whether the plaintiff's entire meal was served, and the timing of the plaintiff's receipt of his medication).

[5] *See Hudson*, 503 U.S. at 4, 9-10 (concluding that allegations that corrections officer punched the inmate in the mouth, eyes, chest, and stomach while another officer kicked and punched the inmate from behind satisfied the objective component of an Eighth Amendment claim).

*LaVallee*, 439 F.3d 670, 688 (10th Cir. 2006) (recognizing that the "Eighth Amendment . . . protects against cruel and unusual force, not merely cruel and unusual force that results in sufficient injury"). "[T]he ultimate constitutional inquiry is directed at whether an unnecessary and wanton infliction of pain has occurred"; "[i]f so, there is no need for a plaintiff to allege significant and lasting injuries." *DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001).

Plaintiff adequately alleges that Defendant Guzman's use of force was not objectively reasonable under the circumstances. Additionally, Plaintiff has alleged that he experienced extreme pain in his left shoulder for over a year because of Defendant Guzman's actions. *Am. Compl.* [#25] at 7. As a result, he has had trouble dressing himself, showering and performing other daily hygienic tasks, and has been unable to defend himself against violent attacks. *Id.* These allegations are sufficient to satisfy the objective prong of Plaintiff's excessive force claim.

### 2.    Subjective Component

Defendant Guzman next asserts that Plaintiff's allegations regarding his culpable state of mind are "conclusory and threadbare". *See Motion* [#42] at 6-7 (arguing that Plaintiff "does not set forth any facts to support the assertion that Mr. Guzman was jealous and angry, and therefore, acted maliciously or sadistically with the intent to cause harm.").

The subjective component focuses "on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Webb v. Sterling Corr. Officer Delaney*, No. 14-cv-1461-RBJ-CBS, 2016 WL 931218, at *3 (D. Colo. Mar. 11, 2016) (citation omitted); *see also Redmond v. Crowther*, 882 F.3d 927, 936 (10th Cir. 2018). "Whether pain is wantonly and

unnecessarily inflicted depends, at least in part, on whether force could have plausibly been thought to be necessary to maintain order in the institution and to maintain the safety of the prison personnel or inmates." *Whitington*, 2009 WL 2588762, at *8 (quoting *Hickey v. Reeder*, 12 F.3d 754, 758 (8th Cir. 1993)); *see also Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1152 (10th Cir. 2006) (noting that the court "can infer malicious, sadistic intent from . . . conduct itself where there can be no legitimate purpose for the officers' conduct") (internal quotations omitted).

In determining whether the use of force was necessary or malicious, a court may consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Stevenson v. Cordova*, No. 14-cv-00649-CBS, 2016 WL 5791243, at *17 (D. Colo. Oct. 4, 2016), *aff'd*, 733 F. App'x 939 (10th Cir. 2018) (citation omitted). "Where no legitimate penological purpose can be inferred from a prison employee's alleged conduct . . . the conduct itself constitutes sufficient evidence that force was used 'maliciously and sadistically for the very purpose of causing harm.'" *Giron*, 191 F.3d at 1290 (quoting *Whitley*, 475 U.S. at 320-21); *see also Johnson v. Soto*, No. 17-cv-02379-RBJ-NRN, 2019 WL 861380, at *6 (D. Colo. Feb. 22, 2019) (finding the plaintiff stated a claim for excessive force where prison official tased him after an earlier disturbance had occurred and the plaintiff had already been handcuffed and subdued).

In applying the above-listed factors, this Court finds that Plaintiff has alleged facts sufficient to satisfy the subjective prong. *First*, according to the allegations, there was no apparent need for Defendant Guzman to yank Plaintiff by the arm on two separate

occasions merely because Sergeant Torrez smiled at Plaintiff. The Amended Complaint [#25] does not allege that Plaintiff was being noncompliant with orders or that Defendant Guzman was responding to an active prison disruption, disturbance, or emergency. *See Am. Compl.* [#25]. Rather, Plaintiff was allegedly performing his regular duties in the kitchen. *Id.* at 7. *Second*, the only alleged threats were two occasions on which Defendant Guzman's wife, Sergeant Torrez, smiled at Plaintiff; however, this was far from a threat to the safety of staff or inmates. *See id*. Taking Plaintiff's allegations as true, the Court can reasonably infer that Defendant Guzman reacted only to cause harm to Plaintiff because Defendant Guzman's wife smiled at him.

### 3.    Clearly Established Constitutional Right

Though the Court finds that Plaintiff adequately alleged both prongs of an excessive force claim, Plaintiff must establish that the alleged constitutional violation was clearly established as of July 10, 2023, and July 26, 2023—the dates of the alleged assaults. *Am. Compl.* [#25] at 7.

A clearly established right is "generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be 'indisputable' and 'unquestioned.'" *Lobozzo v. Colo. Dep't of Corr.*, 429 F. App'x 707, 710 (10th Cir. 2011) (quoting *Zweibon v. Mitchell*, 720 F.2d 162, 172-73 (D.C. Cir. 1983)). Plaintiff has not directed the Court to any Supreme Court or published Tenth Circuit authority. Instead, Plaintiff states in a conclusory fashion that Defendant Guzman "is not entitled to qualified immunity" because his conduct "clearly violates [his] constitutional rights[.]" *Response* [#45] at 2. Plaintiff falls well short of meeting his burden. Plaintiff points to no case law that would give Defendant Guzman "fair notice that [his] conduct rose to the level of a

constitutional violation." *See Escobar v. Mora*, 496 F. App'x 806, 813 (10th Cir. 2012). Further, the Court has not been able to independently locate a case that addresses whether a prison officer violates an inmate's Eighth Amendment rights by yanking on an inmate's arm in a similar context.

In *DeSpain*, the Tenth Circuit held that a defendant's claim of qualified immunity "must fail" when the defendant used pepper spray on an inmate as a practical joke. *DeSpain*, 264 F.3d at 979-80. Though the facts in *DeSpain* are not analogous to the instant case, the force used in both appears to be unwarranted and unjustified. However, as the Tenth Circuit has recognized, rights are not clearly established through "excessive-force principles at only a general level[.]" *Redmond*, 882 F.3d at 939 (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). Therefore, the Court concludes that Defendant Guzman is entitled to qualified immunity because no authority clearly established that the complained-of conduct amounted to a constitutional violation at the time the conduct occurred.

Accordingly, the Court recommends that the Motion [#42] be **granted** and that Plaintiff's excessive force claim against Defendant Guzman be **dismissed with prejudice**. *See Clark v. Wilson*, 625 F.3d 686, 692 (10th Cir. 2010) (reversing denial of qualified immunity and remanding with instructions to dismiss with prejudice).

## B.  Claim Two against Defendant Kudlauskas: Deliberate Indifference to Serious Medical Needs

In support of Claim Two, Plaintiff avers that Defendant Kudlauskas violated his Eighth Amendment rights by delaying medical treatment, specifically, by not ordering an MRI after Plaintiff's repeated requests. *Am. Compl.* [#25] at 7-8. Defendant Kudlauskas

argues that Plaintiff has failed to allege that he was deliberately indifferent to Plaintiff's serious medical needs. *Motion* [#42] at 7.

During a July 26, 2023 appointment with Plaintiff, Defendant Kudlauskas ordered an x-ray of Plaintiff's left shoulder. *Am. Compl.* [#25] at 7. Subsequently, Defendant Kudlauskas ordered Plaintiff to complete a physical therapy course, which he did in August 2023. *Id.* Following completion of physical therapy, Plaintiff continued to experience pain in his left shoulder and he requested an MRI at a subsequent appointment with Defendant Kudlauskas to determine whether he suffered tendon damage when Defendant Guzman yanked on his arm. *Id.* According to Plaintiff, Defendant Kudlauskas informed him that certain steps had to be taken—including a consultation with an outside physical therapist—before an MRI could be performed. *Id.* From October 2023 through January 2024, Plaintiff filed many kites and grievances and had multiple meetings with Defendant Kudlauskas and other officials wherein he repeatedly requested an MRI and articulated his willingness to take any steps necessary to receive the MRI. *Id.* Plaintiff alleges that beyond the physical therapy course, Defendant Kudlauskas provided Plaintiff no further medical treatment during the remainder of his time at BVCF, despite his many complaints. *Id.* at 7-8. Approximately one year after the initial assault, Plaintiff was transferred to Sterling Correctional Facility, where he informed staff that he continued to experience "extreme pain". *Id.* at 7.

"A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (citing *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)). The "deliberate indifference standard lies 'somewhere between the poles of negligence at one end and purpose or

knowledge at the other.'" *Est. of Beauford v. Mesa County, Colorado*, 35 F.4th 1248, 1262 (10th Cir. 2022) (quoting *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)). Like the excessive force standard, the deliberate indifference standard contains "both an objective and a subjective component." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The Court addresses each component in turn.

### 1.    Objective Component

Defendant Kudlauskas argues that Plaintiff fails to meet the objective component because he "does not allege that the delay in treatment resulted in any harm to him, let alone . . . substantial harm[.]" *Motion* [#42] at 10.

The objective component requires that the "deprivation is 'sufficiently serious.'" *Sealock*, 218 F.3d at 1209 (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)). "A medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)). Importantly, however, a plaintiff may satisfy the objective prong based on "[a] delay in medical care . . . [that] result[s] in substantial harm." *Est. of Beauford*, 35 F.4th at 1262 (quoting *Mata*, 427 F.3d at 751). This could include "lifelong handicap, permanent loss, or considerable pain." *See id.*

In his Amended Complaint, Plaintiff alleges that he was in "extreme pain" and had to "suffer through [sic] for over a year" because of Defendant Kudlauskas's denial of his request for an MRI to determine whether he had suffered a tendon injury. *Am. Compl.* [#25] at 7. Plaintiff also alleges that Defendant Kudlauskas provided no treatment, except for a referral to a course of physical therapy, which Plaintiff completed in August 2023

and after which he was still "had extreme pain in [his] left shoulder." *Id*. Plaintiff further alleges limited mobility in his shoulder which impacted his ability to perform daily tasks. *Id.* at 7. Additionally, Plaintiff was allegedly placed in restrictive housing because his shoulder pain made him unable to defend against an attack by another inmate. *Id*.

At this motion-to-dismiss stage, these allegations satisfy the objective component of Plaintiff's deliberate indifference claim. *See Al-Turki v. Robinson*, 762 F.3d 1188, 1193 (10th Cir. 2014) (noting that "an intermediate injury, such as the pain experienced while waiting for treatment and analgesics" may constitute "substantial harm") (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1292 (10th Cir. 2006), *overruled on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *see also Sparks v. Rittenhouse*, 164 F. App'x 712, 718 (10th Cir. 2006) (concluding that allegations of extreme shoulder pain, loss of feeling, and loss of grip satisfied the objective prong of a deliberate indifference claim arising from delayed surgery); *Blackburn v. Baxter*, No. 20-cv-02774, 2021 WL 11449161, at *2, *7-8 (D. Colo. Nov. 2, 2021) (concluding that the plaintiff's allegations regarding pain "purportedly caused by the delay obtaining an MRI, properly reading it, and securing appropriate treatment constitute a sufficiently serious medical need"), *recommendation adopted by* 2021 WL 11449162 (Dec. 10, 2021).

### 2.    Subjective Component

The subjective component requires Plaintiff to plausibly allege that Defendant Kudlauskas had a sufficiently culpable state of mind, i.e., that he knew of and disregarded an excessive risk to Plaintiff's health or safety. *Est. of Beauford*, 35 F.4th at 1262-63. Plaintiff must plausibly allege that Defendant Kudlauskas was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he

must have also draw[n] the inference." *Id*. at 1264 (emphasis omitted). Notably, "[d]eliberate indifference requires more than a showing of simple or heightened negligence." *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003) (citations omitted). "[I]t is not enough for a prisoner to establish that a prison doctor failed to diagnose or treat a serious medical condition properly, and this is true even if the doctor acted negligently." *Horton v. Ward*, 123 F. App'x 368, 371-72 (10th Cir. 2005) (citing *Sealock*, 218 F.3d at 1211). Moreover, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle*, 429 U.S. at 107); *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993)).

Defendant Kudlauskas argues that Plaintiff's allegations fail to satisfy the subjective prong because Plaintiff merely disagrees with the prescribed course of treatment. *Motion* [#42] at 11. According to Plaintiff's allegations, Defendant Kudlauskas recognized Plaintiff's medical condition and, using his professional judgment, provided a course of treatment that consisted of an x-ray and a course of physical therapy. *Am. Compl.* [#25] at 7. The Court agrees that Defendant Kudlauskas' decision not to order an MRI was a matter of medical judgment, which in and of itself does not support an Eighth Amendment claim. *See Estelle*, 429 U.S. at 107 (discussing decision not to order an x-ray); *Broadus v. Corr. Health Partners*, 770 F. App'x 905, 910 (10th Cir. 2019) (finding no constitutional violation where provider denied inmate an MRI); *Ankeney v. Hartley*, No. 09-cv-02085-CMA-MJW, 2010 WL 2004778, at *4 (D. Colo. May 19, 2010) (adopting recommendation to dismiss deliberate indifference claim arising from a failure to order an MRI or prescribe specific treatment), *aff'd*, 524 F. App'x 454, 457-58 (10th Cir. 2013); *cf.*

*Self v. Crum,* 439 F.3d 1227, 1232 (10th Cir. 2006) ("[T]he subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment.").

However, the Court's analysis does not end there. "[A]n inference of deliberate indifference is unwarranted" when medical personnel "order[] treatment consistent with the symptoms presented and then continue[] to monitor the [inmate's] condition[.]" *Mathison v. Wilson*, 719 F. App'x 806, 809 (10th Cir. 2017) (citing *Self*, 439 F.3d at 1232-33). In *Mathison*, a deliberate indifference claim failed, in part, because medical personnel continued to monitor the plaintiff's symptoms. *Id.* The plaintiff "received medical attention every time he went to sick call," and medical personnel "continuously responded to the risk by treating his pain with injections and medication, x-rays, and an outside consultation and request for surgery." *Id.* Conversely, in *Vigil v. Lawrence*, a deliberate indifference claim was allowed to proceed where the initial provider treated the plaintiff, but "failed to provide follow-up care" despite the plaintiff having submitted over twenty "sick call" requests. *Vigil v. Lawrence*, 524 F. Supp. 3d 1120, 1129 (D. Colo. 2021).

According to the Amended Complaint, Defendant Kudlauskas was aware of Plaintiff's ongoing shoulder pain. *Am. Compl.* [#25] at 7. Plaintiff raised the issue of needing further treatment to Defendant Kudlauskas in multiple meetings over a period of months, and through many written kites and grievances. *Id.* Though Defendant Kudlauskas informed Plaintiff further treatment steps were needed, none were ever provided to Plaintiff, even after Plaintiff agreed—and asked—to take those necessary steps. *Id.* This delay in (or outright refusal of) treatment caused Plaintiff to experience unnecessarily prolonged pain for nearly a year. *Id.* The Court concludes, therefore, that

Plaintiff has alleged facts sufficient to establish the subjective prong of the deliberate indifference analysis. In summary, the Court concludes that Plaintiff has plausibly alleged an Eighth Amendment violation by Defendant Kudlauskas.

### 3. Clearly Established Constitutional Right

Defendant Kudlauskas argues that he is entitled to qualified immunity because Plaintiff "failed to allege facts establishing the violation of a constitutional right" and, therefore, has failed to allege violation of a clearly established one. *Motion* [#42] at 12. Because the Court finds that Plaintiff has adequately alleged a deliberate indifference claim against Defendant Kudlauskas, the Court must consider whether the asserted right was clearly established at the time of Defendant Kudlauskas's alleged conduct.

In *McCowan v. Morales*, 945 F.3d 1276 (10th Cir. 2019), the court affirmed a lower court's denial of qualified immunity where prison officials delayed medical treatment for a shoulder injury the pretrial detainee incurred during transport to the police station following his arrest for drunk driving. *McCowan*, 945 F.3d at 1279, 1290-92 (applying analogous Fourteenth Amendment deliberate indifference analysis to pretrial detainee context). The detainee purportedly went without medical care for over two hours while he was at the police station. *Id*. at 1290. While at the police station, the detainee informed the defendant officer that he had previously injured his shoulder, that his shoulder was re-injured during transport to the police station, and that he experienced excruciating shoulder pain; however, the officer disregarded that information. *Id*. at 1292. In affirming qualified immunity's denial, the court reasoned that the "constitutional violation was clearly established by August 2015," when the detainee experienced delayed medical care. *Id*. In support, the court pointed to *Olsen v. Layton Hills Mall*, 312 F.3d 1304 (10th

Cir. 2002), where it concluded that a jury could find that an officer may have been deliberately indifferent to a pretrial detainee's serious health needs arising from an untreated panic attack, which the arresting officer ignored. *Id*. at 1292-93. The court also pointed to *Sealock v. Colorado*, 218 F.3d 1205 (10th Cir. 2000), in which it concluded that a convicted prisoner established a deliberate indifference claim where he complained of symptoms including "crushing" chest pain, his complaints went ignored, and he was forced to suffer for several days before prison officials transported him to the hospital. *Id*. at 1293.

The Court concludes that this published Tenth Circuit precedent placed Defendant Kudlauskas on notice that his alleged conduct "unconstitutionally deprived [Plaintiff] of medical care needed for a serious medical need." *Id*. Therefore, Defendant Kudlauskas is not entitled to qualified immunity. Accordingly, the Court recommends that the Motion [#42] be **denied** with respect to Plaintiff's deliberate indifference claim against Defendant Kudlauskas.

## IV. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that Defendants' Motion [#42] be **GRANTED in part and DENIED in part**, as outlined above.[6]

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and

---

[6] If this Recommendation is adopted, then only Plaintiff's deliberate indifference claim against Defendant Kudlauskas (Claim Two) will remain.

recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: July 22, 2025                    BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge